IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CRED INC., et al.,<br><br>Debtors. | Chapter 11<br>Case No. 20-12836 (JTD)<br>(Bankr. D. Del.)<br>(Jointly Administered) |
| LOCKTON COMPANIES, LLC, *et al.*,<br><br>Appellants,<br><br>v.<br><br>CRED INC. LIQUIDATION TRUST, *et al.,*<br><br>Appellees. | C.A. No. 23-210 (MN)<br>BAP No. 23-00008 |
| UPHOLD HQ INC.,<br><br>Appellant,<br><br>v.<br><br>CRED INC. LIQUIDATION TRUST, *et al.,*<br><br>Appellees. | C.A. No. 23-211 (MN)<br>BAP No. 23-00009 |

## <u>MEMORANDUM OPINION</u>

Michael B. Carlinsky, Renita Sharma, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY; Eric D. Winston, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, CA; Terry L. Wit, QUINN EMANUEL URQUHART & SULLIVAN, LLP, San Francisco, CA; Thomas W. Briggs, Jr., Eric D. Schwartz, Andrew R. Remming, Ryan D. Stottman, Jonathan M. Weyand, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE – Attorneys for Appellants Lockton Companies, LLC, *et al.*

Jorian L. Rose, BAKER & HOSTETLER LLP, New York, NY; Michael T. Delaney, BAKER & HOSTETLER LLP, Cleveland, OH; Jeffrey J. Lyons, BAKER & HOSTETLER LLP, Wilmington, DE – Attorneys for Appellant Uphold HQ Inc.

Angela Somers, Jeffrey E. Gross, Minyao Wang, REID COLLINS & TSAI LLP, New York, NY; Jonathan M. Kass, REID COLLINS & TSAI LLP, Wilmington, DE – Attorneys for Appellees the Trustees of the Cred Inc. Liquidation Trust.

March 29, 2024

*Maryellen Noreika*

**NOREIKA, U.S. District Judge**

Pending before the Court are appeals by Lockton[1] and Uphold HQ Inc. ("Uphold") from the Bankruptcy Court's February 10, 2023 order (B.D.I. 1099)[2] ("the Order") and accompanying Memorandum Opinion, *In re Cred Inc*., 2023 WL 2245371 (Bankr. D. Del. Feb. 27, 2023) ("the Memorandum Opinion") entered in the chapter 11 cases of Cred Inc. ("Cred") and certain affiliated debtors (together, "the Debtors"). The Bankruptcy Court confirmed a liquidating plan (B.D.I. 629-1, A01584-A01729) ("the Plan"), which approved a liquidation trust agreement (B.D.I. 579-1, A00960-A00984) ("the Trust Agreement"), created the Cred Inc. Liquidation Trust ("the Trust") and appointed several individuals as trustees ("the Trustees"). The appeals arise from the Trustees' motion which purportedly sought clarification (B.D.I. 1070, A02037-A02050) ("the Clarification Motion") of a prior ruling made by the Bankruptcy Court on July 19, 2022 ("the July 19, 2022 Hearing"), which denied without prejudice the Trustee's prior motion to establish broad claim assignment procedures. (*See* B.D.I. 1041, A01966-A02036 ("7/19/22 Tr.")). The Clarification Motion specifically sought a determination that the Bankruptcy Court had already ruled, by virtue of comments made at the July 19, 2022 Hearing, that the Trust may acquire third-party claims in connection with preference settlements and pursue those actions. (*See* B.D.I. 1070 at 1). Appellant Lockton objected to the relief, and appellant Uphold joined the objection. Following argument held on February 9, 2023 ("the February 9, 2023 Hearing"), the Bankruptcy Court indicated that it would grant the Clarification Motion. (*See* B.D.I. 1098, A02345-A02403 ("2/9/23

---

[1]     Lockton Companies, LLC and Lockton Companies, LLC – Pacific Series, d/b/a Lockton Insurance Brokers, LLC are referred to herein as "Lockton."

[2]     The docket of the chapter 11 cases captioned *In re Cred Inc., et al.* No. 20-12836 (JTD) (Bankr. D. Del.), is cited herein as "B.D.I. __." Appellants' joint appendix (C.A. No. 23-210-MN, D.I. 20-21) is cited herein as "A__."

Tr.") at 49).  On February 10, 2023, the Bankruptcy Court entered its Order holding that the Plan and the Trust Agreement permitted the Trustees to acquire third-party claims obtained through individual preference settlements and to prosecute them.  (*See* B.D.I. 1099 ¶ 2).  The accompanying Memorandum Opinion explains that the Plan and Trust Agreement "make[] it unambiguously clear that the acquisition of third-party claims was contemplated by the trust . . . ." *In re Cred Inc.,* 2023 WL 2245371, at *6.

On appeal, Lockton and Uphold argue, *inter alia*, that the Bankruptcy Court's holding is predicated upon the misapplication of Delaware law governing the authority of trusts and is inconsistent with the express provisions of the Plan and Trust Agreement.  The Plan is at best ambiguous, they argue, with respect to the Trust's authority to acquire third-party claims, and therefore the Bankruptcy Court erred in denying discovery.  The Court disagrees.  For the reasons set forth below, the Court will affirm the Order.

## I.      BACKGROUND

### A.      The Debtors

The Debtors formed a cryptocurrency company that "operate[d] a global financial services platform serving retail and institutional clients in 183 countries."  (B.D.I. 12 ¶ 1).  The Debtors filed these chapter 11 cases on November 7, 2020.  A bankruptcy examiner's report found theft, fraud, and rampant breaches of fiduciary duty by Cred's management and parties doing business with Cred.  (B.D.I. 605, A01384-88 (Report of Robert J. Stark, Examiner)).

On March 11, 2021, Cred confirmed its Plan which became effective on April 19, 2021. The Plan provided for the formation of the Trust to liquidate the Debtors' assets for the benefit of creditors.  (Plan §§ 1.84, 12.3(c)).  The Debtors' assets were transferred to the Trust, including causes of action such as preference actions.  (A01820).  The Plan and Trust Agreement state expressly that the Trustees have the responsibility of adjudicating "third-party claims assigned,

2

purchased, or otherwise transferred to the Liquidation Trust." (Plan § 12.3(b)(vii), Trust Agreement § 2.4(7)).

Uphold was named as a defendant in an adversary proceeding brought by the Trust, which was later dismissed by the Bankruptcy Court for failure to state a claim. *Cred Inc. Liq. Trust v. Uphold HQ Inc.*, 650 B.R. 803 (Bankr. D. Del. 2023). The Court affirmed that decision on March 27, 2024. *Cred Inc. Liq. Trust v. Uphold HQ Inc.*, Civ. No. 23-461 (MN), 2024 WL 1299636 (D. Del. Mar. 27, 2024). Uphold asserts that it is a creditor and beneficiary of the Trust. (*See* D.I. 19 at 2). Lockton does not claim to be a creditor in the bankruptcy cases, only a defendant that has been named by the Trust. (*See* B.D.I. 1076 at 2 n.2).

### B.    The Assignment Procedures Motion

On June 23, 2022, the Trust filed a motion (B.D.I. 1015, A01864) ("the Assignment Procedures Motion") seeking authority for the Trust to take assignment of the direct claims of creditors against litigation targets – *i.e.*, third-party claims – which were direct rather than derivative actions, that those creditors, rather than the Trust, had standing to assert. (*See* A01869-70). The Assignment Procedures Motion also proposed procedures for obtaining the third-party claims and an incentive for transferors of claims in the ultimate distribution to creditors. Specifically, the Assignment Procedures Motion requested that the Trust be permitted (1) to solicit creditors *en masse*, (2) to use an internet portal to solicit them, and (3) to increase the allowed claims of those creditors who agreed to assign their claims by ten percent – a "bump up" in their recovery of allowed claims. As the Assignment Procedures Motion sought broad authority to acquire third-party claims, it did not specifically address whether the Trust had authority to acquire any specific subset of third-party claims, such as pursuant to a settlement of a potential action to avoid a preferential transfer under § 547 of the Bankruptcy Code.

The Trust did not serve the Assignment Procedures Motion on Lockton. (*See* B.D.I. 1020). Uphold filed objections to the Assignment Procedures Motion (B.D.I. 1027, 1029). At the hearing held on July 19, 2022, the U.S. Trustee expressed concerns. (7/19/22 Tr. at 37-40). Following argument, the Bankruptcy Court[3] did not approve the Assignment Procedures Motion. Among other things, the proposed ten percent "bump up" could not be approved as it was not disclosed in the Plan. Because creditors would be deemed to consent to the transfer of their claims unless the creditor affirmatively opted out, and the Trust proposed to provide notice of the transfer through an online portal, the Bankruptcy Court expressed concerns regarding notice as well. (7/19/22 Tr. at 68:6-7 ("The notice issue is where I get hung up the most.")). The Bankruptcy Court ultimately denied the Assignment Procedures Motion without prejudice to filing a new motion. (*See* B.D.I. 1040 ("[M]otion to approve third party claim assignment procedures (1015) is DENIED WITHOUT PREJUDICE to filing a new motion . . . .")).

During the July 19, 2022 Hearing, which the Bankruptcy Court described as a "conversation,"[4] the Bankruptcy Court made several observations regarding the Trust's ability to acquire third-party claims, including that it was "debatable" whether it was "clear" the Plan authorized the Trust to acquire third-party claims "because the word 'acquire' does not appear in the plan or the trust documents." (7/19/22 Tr. at 49:5-7). The Bankruptcy Court, however, also sought to lay the foundation for a consensual resolution regarding the acquisition of third-party claims by the Trust, raising various issues pertaining to the proposed claim assignment procedures and posited certain perspectives regarding the Plan and/or Trust Agreement, in an apparent effort

---

[3]     Bankruptcy Judge John T. Dorsey ruled on the Assignment Procedures Motion.

[4]     The Bankruptcy Court described its colloquy with counsel, stating that it had "kind of devolved this into just a conversation." (7/19/22 Tr. 59:21-22).

to encourage discussions regarding an amicable resolution of the parties' respective concerns. (*See id*. at 51-52, 65-69).  Among other things, the Bankruptcy Court observed that the Trust could use the language in the Plan and Trust Agreement "in the scenario . . . where you're trying to compromise a claim, a ***preference action*** you have against somebody and they say, Hey, I've got ***a third-party claim*** against somebody else.  I'll give it to you ***in return for your forgiving my preference*** and you say, Okay.  Now, you've bought that claim . . . and then you can pursue that claim."  (*Id*. at 50:4-13) (emphasis added).  The Bankruptcy Court observed that although it "was not completely clear," it was "certainly implied that the Trust . . . ***could seek or could obtain assignment of third-party claims that it could then pursue on behalf of all creditors of the estate***."  (*Id*. at 67:5-10) (emphasis added).  The Bankruptcy Court further observed:

> Now, that still leaves open the issue of individual negotiations with individual claimants and whether or not if there's a claim objection and the trustee wants to settle it, and as a result they give some value to a third-party claim that's going to be assigned to the trust. ***I think that's something that can be done, but it's done on a one-off basis so it's more clear***.

(*Id*. at 67:24-68:5) (emphasis added).  The Bankruptcy Court ultimately encouraged the Trust to work with the U.S. Trustee and the objecting parties to see whether they could agree on appropriate disclosures and procedures for a proposed assignment.  (*See id*. at 68:12-18).

   **C.     The Clarification Motion**

   Thereafter, the Trust acquired certain claims held by creditors in one-off, individual negotiations with creditors, but neither sought to increase any creditor's allowed claim nor to impose any procedure under which a claim would be deemed to be transferred to the trust unless the creditor opted out.  On December 22, 2022, the Trust filed a complaint against Lockton asserting certain third-party claims allegedly assigned to the Trust, including fraudulent misrepresentation, fraud in the inducement, negligent misrepresentation, intentional concealment,

as well as aiding and abetting violation of California's unfair competition law.  (*See* B.D.I. 1076 at 11-12, A02221-A02222).  The Trust filed these claims on behalf of "CredEarn customers who have assigned their customer claims to the Trust."  (*Id.* ¶ 17).

On January 18, 2023, Lockton removed the action to the U.S. District Court for the Northern District of California under the "related to" bankruptcy jurisdiction set forth in 28 U.S.C. § 1334(b).  (B.D.I. 1072-3).  Lockton's notice of removal argues three bases for "related to" jurisdiction: (1) the claims asserted in the California action belonged to the bankruptcy estate; (2) the Trust could not acquire the asserted claims under the Plan and Confirmation Order; and (3) the California action involves the interpretation and enforcement of the Bankruptcy Court's orders.  (*Id.* at 14).

On January 23, 2023, the Trustees filed the Clarification Motion purportedly seeking to clarify certain statements made during the July 19, 2022 Hearing on the Assignment Procedures Motion, which the Trustees referred to as a "bench ruling."  (B.D.I. 1070 at 1).  The Clarification Motion sought a specific determination "that the Trust can acquire third-party customer claims in connection with the settlement of preference claims and prosecute those claims."  (*Id*).  Lockton objected to the Clarification Motion (B.D.I. 1076) and Uphold joined in Lockton's objection (B.D.I. 1086).  Appellants took issue with the fact that the Clarification Motion did not explain which claims were assigned or to be assigned, the nature or amount of the claims transferred, or whether the parties to the assignment transactions were Trust beneficiaries.  They further argued that the Clarification Motion was fundamentally flawed as the Bankruptcy Court never issued a "bench ruling" regarding the acquisition of third-party claims, the Plan and Trust Agreement do not authorize the Trust to acquire Third-Party Claims, and the Trust failed to provide sufficient notice of the motion to Trust beneficiaries.  At best, Appellants argued, the Plan and Trust

Agreement are ambiguous with respect to the Trust's authority to acquire third-party claims, and the Bankruptcy Court should continue the hearing to permit discovery. (B.D.I. 1076 at 4; B.D.I. 1086 at 3).

### D.    The Order

On February 9, 2023, the Bankruptcy Court[5] heard argument on the Clarification Motion and indicated that it would grant the motion. (2/9/23 Tr. at 49). That ruling was reduced to the February 10, 2023 Order, which is the subject of this appeal. As set forth in the Order, "the Court concludes as a matter of law (without the need to consider or rely upon extrinsic evidence of the drafters' intent) that the Plan and the Trust Agreement (as authorized by this Court's confirmation order) permit the Trustees to acquire Third-Party Claims obtained through individual preference settlements, and, if valid grounds exist, to prosecute those claims against any defendant that received adequate notice of the Motion." (B.D.I. 1099 ¶ 2). On February 27, 2023, the Bankruptcy Court filed its Memorandum Opinion pursuant to the Bankruptcy Court's Local Rule 8003-2.

### E.    The Appeals

On February 23, 2023, Uphold and Lockton each filed a notice of appeal (C.A. No. 23-210, D.I. 1; C.A. No. 23-211, D.I. 1). On March 21, 2023, the appeals were consolidated under lead case C.A. No. 23-210-MN. (*See* C.A. No. 23-210, D.I. 14). The merits of Lockton's[6] appeal

---

[5]    The Clarification Motion was heard by the Honorable Craig T. Goldblatt.

[6]    The Trust disputes Lockton's standing to appeal. According to the Trust, the Bankruptcy Court previously determined that Lockton lacked standing to challenge the actions of the Trust, an issue which Lockton did not challenge and has therefore waived on appeal, and its appeal should be accordingly dismissed. (*See* D.I. 22 at 20). According to Lockton, the Bankruptcy Court clearly determined that Lockton has Article III standing because the relief requested by the Trust affects its ability to sue Lockton. (D.I. 15 at 2). The only issue raised by the Trust and rejected by the Bankruptcy Court, Lockton argues, was whether Lockton could oppose the Trust's Clarification Motion and invoke the Trust Agreement even though it was a litigation defendant and not a Trust beneficiary. (*See id.*). This issue is not jurisdictional, Lockton further contends, but rather a question of prudential

are fully briefed.  (D.I. 18, 22, 24).  The merits of the Uphold's appeal are also fully briefed. (D.I. 19, 23, 25).  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.    <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has jurisdiction to hear an appeal from a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).

"When a bankruptcy court has analyzed one of its own orders, 'an appellate court must distinguish between the review of a bankruptcy court's application of legal principles and the review of a bankruptcy court's actual interpretation of an ambiguous provision in its own order.'" *In re LTC Holdings, Inc.*, 10 F.4th 177, 184 (3d Cir. 2021) (quoting *In re Shenango Grp.*, 501 F.3d 338, 346 (3d Cir. 2007)).  "The initial determination of whether a provision is ambiguous [in an order] is reviewed *de novo*."  *Id.*  If this Court finds that the provision is unambiguous following *de novo* review, it exercises "plenary review over the application of legal principles to those unambiguous provisions."  *Id.*  If, however, this Court's *de novo* review finds that the provision is ambiguous, this Court then reviews the Bankruptcy Court's interpretation of the ambiguous

---

standing.  (*See id.*).  Finally, Lockton argues, because the Trust did not cross-appeal the Order, nor contend in its statement of issues that the Bankruptcy Court erred in overruling the Trust's argument that Lockton lacked standing, the Trust has waived that argument. (*Id.*).

At the February 9, 2023 Hearing, the Bankruptcy Court expressed some concern that Lockton was not a Trust beneficiary with standing to object to the assignments proposed by the Trust, but ultimately decided "I am not going to find that the objecting parties lack standing and, therefore, throw out – grant the relief as if it were unobjected to because no party with standing has objected.  I am going to hear this on the merits." (2/9/23 Tr. at 51:11-15).  As the Memorandum Opinion explains, the "Court believes it is more appropriate to consider the objections on the merits."  *In re Cred Inc.*, 2023 WL 2245371, at *5.  This Court will do the same.

provision for abuse of discretion.  *In re TE Holdcorp LLC*, 2023 WL 418059, at *3 (3d Cir. Jan. 26, 2023).

The appropriate standard of review is dependent on the nature of the Order and relief granted thereby.  Because the parties disagree as to the nature of the Order, they disagree as to the applicable standard of review.

The purported relief requested in the underlying Clarification Motion placed the matter in an odd procedural posture.  The Trustees piece together several observations made by the Bankruptcy Court during the July 19, 2022 Hearing on the Assignment Procedures Motion and contend that, taken together, they constitute a prior "bench ruling" – also referred to in the Trustees' appellate briefing as the "2022 Plan Determination" – that the Trust "could seek or could obtain assignment of third-party claims that it could then pursue on behalf of all creditors of the estate" if "it's done on a one-off basis," such as "in return for [the Trust] forgiving [the creditor's] preference.".  (D.I. 22 at 2).  The Trustees further contend that, "[u]nder Third Circuit law, the 2022 Plan Determination can no longer be reviewed."  (*Id.*).  Because the Order merely clarifies and interprets the unreviewable 2022 Plan Determination, the Trustees argue, it may be reviewed only for abuse of discretion, specifically: "Whether the Bankruptcy Court ***abused its discretion*** in . . . finding that the Bankruptcy Court ***had previously determined*** that individual assignments of third-party claims to the Trust as part of settlement agreements were permitted and consistent with the Debtors' Chapter 11 plan."  (*Id.* at 4) (emphasis added).  Thus, the Trustees' apparent position is that Appellants are limited to appealing whether the Bankruptcy Court abused its discretion in determining that ***it had already made a determination*** on the Trust's authority to acquire third-party claims, not whether that determination is correct under unambiguous provisions of the governing agreements.

9

Appellants, on the other hand, argue that although the underlying Clarification Motion purported to seek clarification of a prior ruling, the Order presents a first-time determination as to the relevant provisions of the Plan and Trust Agreement, and whether they are ambiguous with respect to the Trust's authority to acquire third-party claims is a question which should be reviewed *de novo*.  (*See* D.I. 18 at 2-3; D.I. 25 at 2).  Appellants argue that the statements made at the July 19, 2022 Hearing constituting the so-called 2022 Plan Determination were mere *dicta*; accordingly, there was no prior ruling to clarify or appeal.  (*See* D.I. 24 at 9; D.I. 25 at 5-8).

The Trustees' suggestion that these appeals are untimely to the extent they seek to challenge any observations made by the Bankruptcy Court at the July 19, 2022 Hearing is not well taken.  (*See* D.I. 23 at 11).  Appellants were not under an obligation to appeal any comments made during the July 19, 2022 Hearing with which they disagreed – a hearing, as noted above, described by the Bankruptcy Court itself as a "conversation."  The Assignment Procedures Motion was denied without prejudice to refiling the motion.  Appellant could not have appealed the Assignment Procedures Order as it constituted an interlocutory order.  Appellate courts are courts of limited jurisdiction, authorized to hear "appeals from all final decisions of the district court of the United States" and certain interlocutory orders.  *See* 28 U.S.C. §§ 1291, 1292.  As the Third Circuit has explained, the finality requirement of 28 U.S.C. § 1291 is grounded "not in merely technical conceptions of 'finality,'" but rather on a policy "against piecemeal litigation."  *LNV Investments LLC v. Republic Nicaragua*, 396 F.3d 342, 346 (3d Cir. 2005) (quoting *Catlin v. United States*, 324 U.S. 229, 33 (1945)).  "Thus, we have 'adhered consistently to the general rule that we lack appellate jurisdiction over partial adjudications when certain of the claims before the district court have been dismissed *without prejudice*.'"  *Id.* (quoting *Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 438 (3d Cir. 2003)); *accord Brennan v. Kulick*, 407 F.3d 603,

607 (3d Cir. 2005) ("[A] rule characterizing conditional orders of dismissal without prejudice as final and appealable orders would create the risk of multiple litigation . . . .").

Contrary to the Trustees' argument, the Order on appeal constitutes the "initial determination of whether [the Plan provisions are] ambiguous" and it is therefore reviewed *de novo*. *In re LTC Holdings*, 10 F.4th at 184. First, a determination that "the Trust can acquire third-party customer claims in connection with settlement of preference claims and prosecute those claims" was not relief sought in the Assignment Procedures Motion. Second, the Bankruptcy Court's observations at the July 19, 2022 hearing do not constitute a clear holding. *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) (a judicial statement peripheral to the decision is *dicta*; a statement that serves as a necessary predicate for the court's ultimate decision is a holding, not *dicta*). Those observations are better characterized as *dicta* as not one of those observations was a prerequisite to ultimate decision, *i.e.*, the unqualified denial of the Assignment Procedures Motion. Indeed, those comments "could have been deleted without seriously impairing the analytical foundations of the holding," 21 Corpus Juris Secundum § 223 (2023), which was ultimately only that the Assignment Procedures Motion did not comport with the Plan disclosures and notice requirements. Rather, the Bankruptcy Court indicated that the issue of whether the Trust had the authority to acquire third-party claims under the Plan or Trust Agreement was reserved for another day:

> [Counsel for Appellees]: … [Counsel for Appellant] presumably is not inclined to agree to anything that allows us to [acquire] [third-party] claims . . . . So, well I guess we'll file the motion and we'll decide and [counsel for Appellant] will have an opportunity [to object] if there's anything to discuss on that note.
>
> THE COURT: I agree. I think that's something you can talk about it. If you can't come to an agreement, come up with what you think resolves my concerns and you can file another motion, and if

> [counsel for Appellant] still objects, we'll hear the objection, and
> I'll have to rule on it at that time.

(*See* 7/19/22 Tr. at 68:22-69:8).  Finally, as set forth in the Order itself, the Bankruptcy Court made

clear that it decided "as a matter of law" that the Plan and Trust Agreement permit the Trust to

acquire third-party claims through individual preference settlements.  (*See* B.D.I. 1099 at 2).  As

the Order constitutes the initial determination as to whether the Plan is ambiguous as to the Trust's

authority to acquire such claims, the Order is reviewed *de novo.  In re LTC Holdings*, 10 F.4th at

184.

## III.   <u>DISCUSSION</u>

In construing a confirmed plan of reorganization, courts in the Third Circuit apply

principles of contractual interpretation.  *In re Shenango Grp. Inc.*, 501 F.3d at 346 (applying

Pennsylvania contract law where the Plan stated it was governed by Pennsylvania law); *In re*

*NorthEast Gas Generation, LLC*, 639 B.R. 914, 923 (Bankr. D. Del. 2022) (stating that "[t]he

interpretation of a plan of reorganization is governed by the same principles as contract

interpretation").  The Plan provides that unless the Bankruptcy Code or other federal law applies,

"the rights, duties, and obligations arising hereunder shall be governed by, and construed and

enforced in accordance with, the laws of the State of Delaware . . . ."  (Plan § 20.16).

> Delaware adheres to an objective theory of contracts, meaning that
> a contract's construction should be that which would be understood
> by an objective, reasonable third party.  This approach places great
> weight on the plain terms of a disputed contractual provision, and
> we interpret clear and unambiguous terms according to their
> ordinary meaning.  We do not consider extrinsic evidence unless we
> find that the text is ambiguous.  Ambiguity is present only when the
> provisions in controversy are reasonably or fairly susceptible of
> different interpretations or may have two or more different
> meanings.  Critically, a contractual provision is not rendered
> ambiguous simply because the parties in litigation differ as to the
> proper interpretation.

*Cox Commc'ns, Inc. v. T-Mobile US, Inc*., 273 A.3d 752, 760 (Del. 2022) (internal quotes and footnotes omitted).  Similarly, in interpreting the terms of a trust instrument, the language of the trust instrument will be "given their ordinary meaning and the Court will not consider extrinsic evidence to vary or contradict express provisions of a trust instrument that are clear, unambiguous and susceptible of only one interpretation." *Wilmington Trust Co. v. Annan*, 531 A.2d 1209, 1211 (Del. Ch. 1987).

When interpreting a contract, courts applying Delaware law initially look "to the parties' intentions as reflected in the four corners of the agreement."  *GMG Cap. Invs., LLC v. Athenian Venture Partners I, LP*, 36 A.3d 776, 779 (Del. 2012).  In doing so, courts must "construe the agreement as a whole, giving effect to all provisions therein."  *E.I. du Pont de Nemours & Co. v. Shell Oil Co*., 498 A.2d 1108, 1113 (Del. 1985); *see also In re G-I Holdings, Inc.*, 755 F.3d 195, 202 (3d Cir. 2014) ("A court should interpret the contract in such a way as to not render any of its provisions illusory or meaningless.") (citations and quotations omitted).  "Contract language cannot be construed in a vacuum", however.  *In re Cendant Corp. Sec. Litig.*, 181 F. App'x 206, 209 (3d Cir. 2006).  "Moreover, the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." *In re Stone & Webster*, 558 F.3d 234, 246 (3d Cir. 2009) (*quoting E.I. du Pont*, 498 A.2d at 1113).

### A.     The Trust May Acquire and Litigate Third-Party Claims in Connection with the Settlement of Preference Actions

Under Delaware law, the authority of the Trustees under the Trust Agreement is strictly construed and limited to those powers "conferred upon [the Liquidation Trustees] in specific words by the terms of the [Trust Agreement]" or "necessary or appropriate to carry out the purpose of the [Trust] and are not forbidden by the terms of the [Trust Agreement]."  (D.I. 19 at 36 (quoting

13

Restatement (Second) of Trusts § 186 (1959))).   Although Appellants contend that the Plan and Trust Agreement are "ambiguous" as to whether the Trust may acquire and litigate third-party claims in connection with preference settlements, the real crux of their various arguments is that, in Appellants' view, such a right is not "conferred upon [the Liquidation Trustees] in specific words by the terms of the [Trust Agreement]."   For example, with respect to the Bankruptcy Court's determination that the Assignment Provisions "make[] it unambiguously clear that the acquisition of third-party claims was contemplated by the trust," Uphold argues that "[i]n so ruling, the Bankruptcy Court erred as the finding contradicts the plain language (*or lack thereof*) in the Plan and Liquidation Trust . . . ."  (D.I. 19 at 42-43) (emphasis added).  The overall intent of the parties and purpose of the Trust, as reflected in the four corners of the Plan and Trust Agreement, is to liquidate whatever assets are transferred to the Trust, including causes of action, for the benefit of creditors.   The Court agrees with the Bankruptcy Court that authority to acquire third-party claims in connection with preference settlements and litigate those claims falls within the broad powers set forth in the Plan and Trust Agreement.   As it is both "appropriate to carry out the purpose of the [Trust]" and "not forbidden by the terms of the [Trust Agreement]," the acquisition and litigation of these claims does not violate Delaware trust law.   (D.I. 19 at 36 (quoting Restatement (Second) of Trusts § 186)).

       **1.**     **Authority to Acquire and Litigate Third-Party Claims in Connection with the Settlement of Preference Actions Falls Within the Broad Powers Set Forth in the Plan and Trust Agreement**

As set forth in the Trust Agreement, the Trust was established "on behalf of, and for the benefit of, the Liquidation Trust Beneficiaries" for a primary purpose: "to hold, administer, and liquidate the Liquidation Trust Assets, and to distribute the same or proceeds of the same to the Holders of Allowed General Unsecured Claims, in accordance with the terms of the Plan and this Agreement."  (Trust Agreement at 1 (Recitals)).  As to the powers of the Trustees generally, "The

Liquidation Trustees shall be responsible for (a) liquidating and administering (or abandoning, as the case may be) the Liquidation Trust Assets, including the Avoidance Actions, the Debtors' commercial tort claims, the Debtors' claims or Causes of Action against the Debtors' directors and officers, and claims or Causes of Action that may be satisfied by insurance policies, (collectively, "the Causes of Action"), and (b) taking actions on behalf of, and representing, the Liquidation Trust." (*Id*. § 2.1).  As to scope, the Trust Agreement provide that the responsibilities and authority of the Trustees shall include, without limitation except for express limitations set forth in the Trust Agreement:

> (i) holding and administering the Liquidation Trust Assets; (ii) evaluating and determining strategy with respect to the Causes of Action and litigating the Causes of Action, or settling, transferring, releasing or abandoning any and all Causes of Action on behalf of the Liquidation Trust; facilitating the prosecution or settlement of objections to or estimations of Claims asserted against the Debtors, their estates, the Liquidation Trust or the Liquidation Trust Assets; calculating and implementing distributions to the Beneficiaries . . .

(*Id*. § 2.2).  Section 12.3(b) of the Plan provides that the "[r]esponsibilities of the Liquidation Trustees . . . ***shall include, but are not limited to***:

> (i) Administering the implementation hereof, including the making of the Distributions contemplated herein;
>
> (ii) Marshalling, marketing for sale, and liquidating the Estates' Assets; . . .
>
> (v) Commencing, prosecuting, or settling claims and Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges in accordance herewith and paying all associated costs; . . .
>
> (vii) Adjudicating third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust; . . ."

(Plan § 12.3(b) (emphasis added)).  These powers are set forth in the Trust Agreement as well. Sections 12.3(b)(xiii) and 2.4(18) of the Trust Agreement both provide that the Trustees have powers "as are necessary and reasonable to carry out the purposes of the Liquidation Trust."  And as the Bankruptcy Court correctly determined, the Trust's non-exclusive powers include the ability to acquire third-party claims under the Assignment Provisions – § 12.3(b)(vii) of the Plan and § 2.4(7) of the Trust Agreement – which authorize the Trust to "[a]djudicat[e] third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust."  Thus, the Trust may clearly acquire and adjudicate/litigate third-party claims in connection with preference settlements.

### 2.    Such Authority Is Appropriate to Carry Out the Purpose of the Trust

To accomplish the Trust's purpose of "liquidat[ing] and administering . . . the Liquidating Trust Assets, including the Causes of Action," the Trustees are charged with the responsibilities of, among other things, "evaluating and determining strategy with respect to the Causes of Action," "[c]ommencing, prosecuting, or settling claims and Causes of Action," and "litigating the Causes of Action."  (Trust Agreement at § 2.2; Plan § 12(b)(v)).  No party disputes that the Debtors' preference claims are Causes of Action constituting Liquidation Trust Assets.  In connection with these responsibilities, the Plan bestows broad powers on the Trust regarding preference actions generally.  The Plan and Trust Agreement explicitly provide that Causes of Action, which includes preference claims, are for the Trust to pursue.  (Trust Agreement § 2.4(5) (Trust may "commence, prosecute and settle claims and Causes of Action"); (Plan at § 1.10) (Avoidance Actions include preference actions commenced pursuant to § 547 of the Bankruptcy Code); Plan § 12.3(c) (giving Trust "the right to pursue or not pursue, or . . . compromise or settle any Liquidation Trust Assets," including "any Causes of Action *or Claims relating to the Liquidation Trust Assets* or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Trust on or after the Effective Date")) (emphasis added).

16

### 3.     Such Authority Is Not Forbidden by the Terms of the Plan or Trust Agreement

To accomplish the Trust's purpose of "liquidat[ing] and administering . . . the Liquidating Trust Assets, including the Causes of Action," the Plan and Trust Agreement clearly authorize the Trust to settle the Avoidance Actions such as the preference actions.  (Plan § 12.3(b)(v); Trust Agreement § 2.4(5)).  Neither the Plan nor the Trust Agreement places any restriction on what form such a settlement may take.  Determining what constitutes appropriate consideration in exchange for the settlement of a preference claim is within the Trustees' authority.  (*See* Plan at § 12.3(b)(iii) ("Conducting an analysis of any and all Claims and Equity Interests and prosecuting objections thereto or settling or otherwise compromising such Claims and Equity Interests, if necessary and appropriate . . .")).  And § 2.5 of the Trust Agreement provides that the Trustees do not need to obtain Bankruptcy Court approval for any permissible action unless it is specifically required in the Trust Agreement or Plan.  This is just this point that the Bankruptcy Court was making in stating that a liquidating trust like the Trust may operate within the confines of a plan, trust agreement, and the Bankruptcy Code without seeking approval for each action.  *See In re Cred Inc.*, 2023 WL 2245371, at *3.

The Plan and Trust Agreement further authorize the Trustees to liquidate the Avoidance Actions, which must also include authority to liquidate consideration, such as third-party claims, received as part of settling Avoidance Actions.  (Plan §§ 1.86 and 12.3(b)(ii); Trust Agreement § 2.4(2)).  As the Trust acquired the third-party claims as consideration for the preference actions, the Trust has a right to liquidate such consideration through sale, settlement, or further litigation of those claims, within the Trustees' discretion, should the Trustees determine that to do so will inure to the benefit of Trust beneficiaries.  The proceeds of the third-party claims are Net Distributable Assets under § 1.94 of the Plan and will be distributed to and shared equally with

unsecured creditors as these recoveries are owned by the Trust.  Therefore, § 12.3(b) of the Plan and § 2.4 of the Trust Agreement support the Trust's authority to acquire and litigate third-party claims as part of its broad powers to settle same.

### 4. Appellants Fail to Establish Two or More Reasonable Interpretations

Appellants pose a strained reading of the Plan and Trust Agreement, centered on the definition of "Causes of Action," which this Court does not share.  The Trust has the power to liquidate "Liquidation Trust Assets" which is defined as "all of the Estate's **_Assets_** transferred to the Liquidation Trust pursuant to § 12.3(c) hereof."  (Plan § 1.86).  Section 12.3(c) of the Plan governs the "Establishment of a Liquidating Trust" and provides that on the Effective Date, ". . . any and all of the Estates' **_Assets_** shall . . . be transferred to and vest in the Liquidation Trust." (Plan § 12.3(c)) (emphasis added).  The non-exclusive list of "Assets" includes "the assets **_of each of the Debtors_** of any nature whatsoever, including all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates."  (Plan § 1.8) (emphasis added).  Although "Assets" include the "Causes of Action," Appellants argue, those "Causes of Action" are limited to claims (including third-party claims) "**_of the Debtors and/or their Estates_**" which, Appellants further argue, necessarily excludes actions belonging to third parties.  (See D.I. 18 at 12; D.I. 1 at 19 and 30-31 (citing Plan § 1.19) (emphasis added)).  By the same token,  Appellants argue, acquisition and liquidation of third-party claims in connection with preference settlements provides no benefit to Trust beneficiaries.  Because third-party actions claims are not Liquidation Trust Assets, any proceeds therefrom cannot be distributed to Trust beneficiaries.  (See D.I. 25 at 15).

First, the list of Assets is non-exclusive.  Second, the "Causes of Action" that make up the Liquidation Trust Assets are not so limited.  The Trust has the power to liquidate "Liquidation

Trust Assets," which include assets transferred to the Trust pursuant to § 12.3(c).  Section 12.3(c) in turn includes "any and all of the claims, Causes of Action (including but not limited to those Causes of Action listed on the Causes of Action List and Avoidance Actions) and related rights, whether or not asserted as of the Effective Date and all proceeds of the foregoing."  (Plan § 12.3(c)).  The "non-exclusive" "Causes of Action List" on "Exhibit A" to the Plan includes generic third-party tort claims: "*[a]ll* actual or potential contract and tort actions that may exist or *may subsequently arise,* except actions expressly released under the Combined Plan and Disclosure Statement."  (*See* A01853 (emphasis added)).  "Causes of Action" also includes the estate claims "pending on the Effective Date . . . *or instituted after the Effective Date* against any Entity."  (Plan § 1.19 (emphasis added)).  Thus, these provisions permit the assignment of claims to the Trust, which is a successor in interest of the Debtors/Estates for the purposes set forth in the Trust Agreement, whether the assignments take place before or after the Effective Date.  (Trust Agreement § 10.1).

Moreover, as the Bankruptcy Court explained, the Assignment Provisions make clear that the Trust's acquisition of third-party claims was contemplated.  Under the express terms of the Plan, the responsibilities of the Trustees include "adjudicating third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust."  (Plan § 12.3(b)(vii)).  The Trust Agreement contains the same authorization to "Adjudicate third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust."  (Trust Agreement § 2.4(7)).  These provisions are unambiguous, thus any construction of the Plan and Trust Agreement put forth by Appellants must give meaning to the explicit grant of authority to "adjudicate[e] third-party claims [that are] *assigned, purchased, or otherwise transferred* to the Liquidation Trust."  (Plan § 12.3 (b)(vii) (emphasis added)).

According to Lockton, the Bankruptcy Court incorrectly inferred from this provision the authority to acquire third-party claims as part of preference settlements; at best, it argues, the Assignment Provisions render the Plan and Trust Agreement ambiguous, because "the Trust is not a court and the Trustees cannot adjudicate anything." (D.I. 18 at 22). As Lockton explains:

> This provision, on its own, is illogical. It indicates that the Trustees themselves adjudicate third-party claims. The term "adjudicate" means to "rule upon judicially," "to hear or decide a case," "to serve as a judge," or to "pronounce or decree by judicial sentence, or by a similar legal or official ruling." *Jones v. City of Franklin*, 677 F. App'x 279, 289 (6th Cir. 2017) (citing Black's Law Dictionary, Webster's New World College Dictionary, and Oxford English Dictionary). The Trustees have no ability to "adjudicate" anything because neither they nor the Trust are a judicial body.

(*Id.* at 27). Uphold similarly argues that "adjudicate" must be given is plain meaning, and the authority to "adjudicate" third party claims "does not necessitate or infer the authority to 'acquire' third-party claims." (D.I. 25 at 14). Neither party explains how any claims may be "assigned, purchased, or otherwise transferred to the Liquidation Trust" as the Assignment Provisions clearly permit, **without** the Trust also having **acquired** them. Relying the "Causes of Action" argument, Uphold argues that because such actions may include only "third-party claims . . . of the Debtors and/or their Estates . . .," the only logical reading of the Assignment Provisions is that the Trust has authority to acquire Debtors' Causes of Action which already constitute third-party clams, such as claims against Debtors' insurers or insurance policies, that are "assigned, purchased, or otherwise transferred to the Liquidation Trust." (*See id.*). In light of the Trust's purpose to liquidate the Debtors' Assets, including the non-exclusive list of Assets attached to the Plan, such a limited reading does not follow from the broad language of the Assignment Provisions or render those provisions susceptible to a different interpretation.

Appellants' arguments are fundamentally flawed because they have not established that the Plan or the Trust Agreement is ambiguous.  An ambiguity exists "only when the language is subject to two or more reasonable interpretations."  *New Castle Cnty. v. Hartford Accident & Indemn. Co.*, 970 F.2d 1267, 1270 (3d Cir. 1992) (applying Delaware law).  As this Court has noted, courts "will not reach to create ambiguity where none exists."  *In re Zohar III, Corp.*, 2020 WL 3960820, at *14 (D. Del. July 13, 2020).  The Plan and Trust Agreement provide for liquidation of settlements *and* the adjudication of third-party claims, two separate powers.  That these documents did not expressly connect the litigation of assigned claims to the settlement of Avoidance Actions like preferences, or explain how they operate separately, does not make the contracts ambiguous.  The unambiguous Assignment Provisions must be given their plain meaning.  *Chesapeake Utilities Corp. v. Am. Home Assur. Co.*, 704 F. Supp. 551, 559 (D. Del. 1989) (the plain terms of a contract will be enforced as written).

The Trust's broad authority relating to settlement of preference actions follows from the plain language of the Plan and Trust Agreement.  Permitting the Trust to acquire and litigate/adjudicate third-party claims in connection with the settlement of preference actions is consistent with the Trust's purpose of liquidating Avoidance Actions, and no provision of the Plan or the Trust Agreement prohibits or otherwise limits same.

## B.    The Bankruptcy Court Did Not Err When It Entered the Order Without Granting Discovery

Lockton argues that the Bankruptcy Court erred in denying basic discovery in connection with the Clarification Motion because the Plan and Trust Agreement are ambiguous regarding the authority of the Trust to acquire third-party claims.  According to Lockton, resolving such ambiguity requires considering extrinsic evidence, such as obtaining the testimony of the drafters of the Trust Agreement regarding their intention at the time of the drafting.

"If contractual language is plain and clear on its face, *i.e.*, it conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent." *Novel Drug Sols., LLC v. Imprimis Pharm., Inc*., 2018 WL 4795627, at *3 (D. Del. Sept. 26, 2018) (citations and quotations omitted). This Court agrees with the Bankruptcy Court's holding that the Plan and Trust Agreement provide clear authority for the Trust's acquisition of third-party claims. Lockton has not established that the Plan and Trust Agreement provisions are subject to two or more reasonable interpretations. And in the absence of ambiguity in the terms of the applicable documents, it would be neither necessary nor appropriate to consider extrinsic evidence.

The cases cited by Appellants which considered extrinsic evidence are distinguishable: one involved plan provisions that directly contradicted each other, and the second concerned a contract containing an obligation subject to multiple reasonable competing interpretations. *See In re Forklift LP Corp*., 363 B.R. 388, 395-96 (Bankr. D. Del. 2007) (contradictory plan provisions); *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc*., 702 A.2d 1228 (Del. 1997) (competing interpretations whether indemnity arose when product was manufactured/purchased or when injury occurred).

Appellants correctly point out that, at the July 19, 2022 Hearing, the counsel for the Trust referenced negotiations with the Committee in connection with the drafting of the Plan and Trust Agreement. (*See* 7/19/22 Tr. at 5:25-6:15). Appellants argue that that discovery should have been permitted to test the truth of the Trustees' factual assertion. (*See* D.I. 24 at 26 n.14). Negotiations relating to Plan and Trust Agreement documents, if any, would constitute evidence extrinsic to the four corners of those documents. The Trust's assertions as to alleged negotiations are not referenced in support of the Bankruptcy Court's ruling, however, in any of the transcript of the February 9, 2023 Hearing, the Order, or in the Memorandum Opinion. There is no indication in

the record that the Bankruptcy Court gave any consideration to the Trustees' counsel's comments in connection with the ruling. Rather, the Bankruptcy Court determined the question before it as a matter of law and on the basis of the clear language of the Plan and Trust Agreements.

**C.     Appellants Fail to Support the Argument that the Trust Has Contravened Tax Law or Delaware Trust Law**

Uphold asserts that the Trust would violate federal tax law by litigating the assigned third-party claims. (D.I. 19 at 29-36; D.I. 25 at 20). The record reflects that Uphold raised the tax issue below. (*See* B.D.I. 1027). Lockton asserts that litigating the assigned third-party claims would also violate Delaware trust law. The Memorandum Opinion did not address these arguments, and the Court finds them unavailing.

Uphold suggests that the Trust will be in violation of federal tax law if it obtains a third-party's causes of action as consideration for settling a preference claim and proceeds to liquidate the causes of action by litigating them and distributing any proceeds equally to all unsecured creditors. (D.I. 19 at 18-34). Uphold speculates that by doing so, the Trust's primary purpose has been transformed into running a for-profit business, in violation of tax regulations. (*Id.* at 30 (citing 26 C.F.R. § 301.7701-4(d))). Uphold offers neither a tax opinion nor any decision or administrative ruling that stripped a liquidating trust of its status of a trust under those circumstances. Uphold concedes that the Trust has the power to take assignment of third-party claims transferred before the Effective Date (*see* D.I. 18 at 28) but fails to explain why such assignments pose a different risk. Uphold relies solely only a federal tax regulation about the purposes of trusts, 26 C.F.R. § 301.7701-4(d), but offers no support for its contention that the Trust's purpose has not been (or would be) "so obscured by business activities that the declared purpose of liquidation can be said to be lost or abandoned." *Id.*

Lockton suggests that the Bankruptcy Court's analysis was erroneous based on its contention that trusts are interpreted differently and more narrowly under Delaware law. (*See* D.I. 18 at 29-31). The Court agrees that this misstates the law. Uphold relies on *Clarke Mem'l Coll. v. Monaghan Land Co.*, 1968 WL 2173, at *4 (Del. Ch. Oct. 25, 1968), but this unreported decision is both factually distinguishable and contrary to more recent controlling decisions. The Delaware Supreme Court has emphasized that when courts construe a trust instrument, its intent may be inferred from "the language of the trust instrument, read as an entirety, in light of the circumstances surrounding its creation." *See In re Peierls Family Inter Vivos Trusts*, 77 A.3d 249, 263 (Del. 2013) (holding that the implicit meaning of the trust document controlled and a "trust instrument may expressly or implicitly permit a change in the place of administration.") (quoting *Annan v. Wilmington Trust Co.*, 559 A.2d 1289, 1292 (Del. 1989)). Thus, Delaware considers the overall context for the purpose of a trust, much like how courts consider the purpose of any contract. *In re Imerys Talc Am.*, Inc., 2019 WL 3253366, at *4 (D. Del. July 19, 2019) (noting "underlying purpose of the contract"). This general rule of construction under Delaware law applies to liquidation trusts. *In re All Matters Related to N. Am. Refractories Co.*, 647 B.R. 466, 480-81 (Bankr. W.D. Pa. 2022) (considering circumstances of liquidation trust's creation to determine how the trust could review claims submitted to it).

Given the Trust's purpose of liquidating post-confirmation value for the beneficiaries, acquiring and litigating claims in connection with the settlement of preference actions is consistent with the circumstances of the creation of the Trust as well as Delaware law.

### D.    *Dicta* Does Not Provide Any Basis to Reverse the Order

Both Lockton and Uphold argue that the Bankruptcy Court's Memorandum Opinion incorrectly analogized the Trust to a reorganized debtor, as the Trust is subject to an entirely different statutory regime under Delaware law. (*See* D.I. 18 at 8, 32; D.I. 19 at 5). The analogy is

inapposite, Lockton argues, because reorganized debtors, unlike liquidation trusts, are free to conduct any business, whereas liquidation trusts are limited to liquidating assets and distributing proceeds to creditors within the confines of the relevant agreement.  (*See* D.I. 18 at 8).  Uphold similarly argues that the Bankruptcy Court "erred in finding that the Liquidation Trust may engage in any business not prohibited by the Plan or Trust Agreement."  (D.I. 19 at 40).  To the extent that the Bankruptcy Court relied on this analogy, Appellants argue, the Bankruptcy Court erred.

It is clear from the Memorandum Opinion that the Bankruptcy Court did not rely on an analogy, but rather on the unambiguous language of the Plan and Trust Agreement.  Moreover, the Bankruptcy Court's limited comparison between the Trust and a reorganized debtor is not controversial.  The Bankruptcy Court stated that "the trust is a post-confirmation entity, no different than a reorganized debtor *in terms of its obligation to seek court approval for its post-bankruptcy actions.*"  *In re Cred Inc*., 2023 WL 2245371, at *5 (emphasis added).  The Bankruptcy Court reasoned that after a plan is confirmed, a trust – like a reorganized debtor – can do what it is permitted to do consistent with its purpose and applicable laws.  A trust acts in accordance with its governing agreement, a trust agreement, just as a reorganized company acts in accordance with an operating agreement, articles of incorporation or bylaws.  And in both cases, a plan of reorganization provides the overall limitations on what the entities can do, but it does not interfere with their day-to-day activities.  Contrary to Appellants' characterization, this portion of the Memorandum Opinion was not a ruling that a liquidating trust has carte blanche to ignore an express restriction in a plan or governing trust agreement.  Appellants have identified no error stemming from the Bankruptcy Court's limited comparison between the Trust and a reorganized debtor.

### E.      Whether the Order Resulted in an Impermissible Plan Modification

Uphold argues that the third-party assignments violate the Plan, and it is too late for any modification to the Plan as the Plan has been substantially consummated.  (D.I. 19 at 47-48; D.I. 25 at 21).  The Court agrees with the Trustees that the acquisition of third-party claims does not alter the treatment of Class 4 creditors' claims in any way, nor does it violate § 1123(a)(4) of the Bankruptcy Code, as no claim amount becomes greater or lesser due to the acquisition of these claims.  The only manner in which Class 4 claimants are impacted by the assignment is that they are afforded the opportunity to obtain a greater percentage recovery on a *pari passu* basis (not a larger claim amount) resulting from a settlement or successful judgment against third-party defendants.  As all recoveries will be shared pro rata by all Class 4 claimants, these creditors are treated equally as was expected under the Plan.  Thus, acquisition of claims is consistent with § 1123(a)(4), which states that a plan "must provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  Section 1123(a)(4) is satisfied if – as is this case here – "all claimants within a class . . . have the same opportunity for recovery."  *In re W.R. Grace & Co.*, 729 F.3d 311, 344 n.8 (3d Cir. 2013).  What matters is not that claimants recover "the same amount of money for their claims," but rather that they have equal opportunity to recover on their claims.  *See id.*

### F.      Whether the Bankruptcy Court violated Uphold's Due Process Rights

Uphold argues that the Bankruptcy Court violated its procedural due process rights "by granting the Trust relief beyond the scope of the relief requested in the [Clarification] Motion and, furthermore, without proper notice to affected parties."  (D.I. 19 at 49).  It argues that "the Bankruptcy Court denied Uphold adequate procedural due process, as Uphold was never afforded proper notice and an adequate opportunity to address the question of whether the [Assignment

Provisions] (or any other provision of the Plan or Trust Agreement) may be reasonably interpreted as authorizing the Trust to acquire Third-Party Claims as part of the settlement of Preference Actions." (*Id.* at 51-52). The Bankruptcy Court did not grant relief beyond the scope requested in the Clarification Motion, which sought a specific ruling as to whether "the Trust can acquire third-party customer claims in connection with the settlement of preference claims and prosecute those claims." (*See* B.D.I. 1070 at 1). The fact that the Bankruptcy Court carefully explained its reasoning in response to the issues raised by Uphold did not alter the relief granted.

Uphold further argues that the Bankruptcy Court violated due process because it "ruled on the [Clarification] Motion despite deficient notice to parties in interest . . . [and] the Trust failed to serve the [Clarification] Motion on all Beneficiaries." (D.I. 19 at 50). But there is no dispute that Uphold itself received notice of the Clarification Motion. (*See* A02203, A02205-08). And Uphold cannot raise due process vicariously on behalf of others, as it lacks standing to do so. *In re W.R. Grace,* 729 F.3d at 340 n.5 ("AMH does not contend that its due process rights have been violated by the Plan, nor could it, as it participated extensively throughout the bankruptcy proceeding and had the opportunity to vote. Therefore, as litigants in federal court are [generally] barred from asserting the constitutional rights of others, AMH lacks standing to raise that argument in this appeal.") (citation and internal quotations omitted).

## IV.   <u>CONCLUSION</u>

The Bankruptcy Court correctly rejected Appellants' arguments that the Order, "contradicts the plain language (or lack thereof) in the Plan and Liquidation Trust," or that the Plan and Liquidating Trust Agreement are otherwise ambiguous. The Trust's right to acquire and litigate third-party claims in connection with the settlement of preference claims is appropriate to carry out the purpose of the Trust and is not prohibited or otherwise limited by the Plan and Trust

Agreement.  Appellants' remaining arguments are unavailing.  Accordingly, the Order shall be affirmed.  A separate Order shall be entered.